NO. 10-6160

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                    PLAINTIFF-APPELLEE

v.

BRYAN TIMOTHY CURTIS                    DEFENDANT-APPELLANT

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
DISTRICT JUDGE JOSEPH H. McKINLEY, JR.

_____

BRIEF FOR APPELLEE UNITED STATES OF AMERICA
_____

DAVID J. HALE
United States Attorney

Candace G. Hill
Assistant U.S. Attorney
U.S. Attorney's Office
510 W. Broadway, 10th Floor
Louisville, KY 40202
PH:(502)625-7079/FAX:(502)582-5067
Email: Candy.Hill@usdoj.gov
Attorney for the United States

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . v

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    The Self-Representation Issue and New Trial Motion.. . . . . . . . . . . 3

    2.    The Obstruction-of-Justice Enhancement. . . . . . . . . . . . . . . . . . . . 7

    3.    Application of the "Pattern" Enhancement. . . . . . . . . . . . . . . . . . . 12

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I.    THE  DISTRICT COURT DID NOT ABUSE ITS
        DISCRETION IN RULING ON CURTIS' SELF-
        REPRESENTATION ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.    The District Court Conducted a Proper Inquiry on the
            Issue of Whether Curtis Knowingly and Voluntarily
            Waived His Right to Counsel.. . . . . . . . . . . . . . . . . . . . . . . 17

    II.    THE DISTRICT COURT PROPERLY APPLIED THE
        OBSTRUCTION-OF-JUSTICE ENHANCEMENT. . . . . . . . . . . . . 19

i

A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.    The District Court Did Not Err in Applying the
       Obstruction of Justice Enhancement Because Curtis
       Suborned His Mother's Perjury. . . . . . . . . . . . . . . . . . . . . . . 21

III.    THE DISTRICT COURT PROPERLY APPLIED THE
         "PATTERN" SENTENCING ENHANCEMENT UNDER
         USSG § 2S1.3(B)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.    THIS COURT LACKS AUTHORITY TO REQUIRE
         AMENDMENT OF THE TRANSCRIPTS. . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

DESIGNATION OF DISTRICT COURT DOCUMENTS. . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

Cases                                                                                    Page

*Anderson v. City Of Bessemer*, 470 U.S. 564 (1996). . . . . . . . . . . . . . . . . . . . . . . 17

*Faretta v. California*, 422 U.S. 806 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United Sates v. Chance,* 306 F.3d 356 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Cowart*, 90 F.3d 154 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . 20, 26

*United States v. Dunnigan*, 507 U.S. 87 (1993). . . . . . . . . . . . . . . . . . . 20, passim

*United States v. Flonnory*, 630 F.3d 1280 (10th Cir. 2011). . . . . . . . . . . . . . . . . 20

*United States v. Gilpatrick*, 548 F. 3d 479 (6th Cir. 2008). . . . . . . . . . . . . . . . . . 24

*United States v. Herndon,* 156 F.3d 629 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . 17

*United States v. Hurst*, 228 F.3d 751 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 19

*United States v. McBride*, 362 F.3d 360 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . 19

*United States v. McDowell*, 814 F.2d 245 (6th Cir. 1987). . . . . . . . . . . . . . . . . . . 18

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . 20, 21, 26

*United States v. Seago*, 930 F.2d 482 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Washington,* 584 F.3d 93 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . 17

*United States v. Williams*, 641 F.3d 758 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . 19

*United States v. Zajac,* 62 F.3d 145 (6th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . 20

<u>Statutes</u>

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1621. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 1622. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. §3742(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

31 U.S.C. § 5324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

31 U.S.C. § 5324(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

31 U.S.C. § 5324(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>United States Sentencing Guidelines</u>

USSG § 2B1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, passim

USSG § 2S1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

USSG § 2S1.3(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

USSG § 2S1.3(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

USSG § 2S1.3(b)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, passim

USSG § 3C1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

<u>Federal Rules of Appellate Procedure</u>

Fed. R. App. P. 10(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues have been thoroughly addressed in the briefs, and are not complex, oral argument is unnecessary.

ISSUES PRESENTED

I.    Whether the District Court Abused its Discretion in Ruling on Curtis' Self-
      Representation Issues.

II.   Whether the District Court Committed Plain Error by Enhancing Curtis'
      Base Offense Level for Obstruction of Justice.

III.  Whether the District Court Committed Plain Error by Enhancing Curtis'
      Base Offense Level for Committing Counts 2-6 as Part of a Pattern of
      Unlawful Activity Involving More Than $100,000 in a 12-Month Period.

IV.   Whether This Court Has Any Authority to Order Changes in the Trial
      Transcript.

STATEMENT OF THE CASE

Bryan Curtis appeals his conviction and sixty-three-month sentence

following his jury trial for one count of conspiracy to commit wire fraud, in

violation of 18 U.S.C. § 371, and five counts of structuring financial transactions

to evade reporting obligations, in violation of 31 U.S.C. § 5324(a)(3).  (R. 68,

Judgment).  He appeals from the denial of his motion for a new trial, and from his

sentence.

STATEMENT OF THE FACTS

From sometime in 1999 until 2007, Cynthia Beeckman embezzled over $3

million from her employer, Brewer, Inc.  (R. 69, Presentence Report at ¶ 27).

Beeckman was the accountant for Brewer Inc., and was in a romantic relationship

with appellant, Bryan Curtis. (*Id*. at ¶ 10).  Beeckman funneled a lot of the funds

1

she embezzled into bank accounts Curtis maintained at various banks. (*Id.* at ¶19). Curtis was a high-stakes gambler, and spent the money Beeckman gave him at various casinos in Indiana, as well as on personal items. (*Id.* at ¶ 20). Curtis withdrew cash and wrote many checks, in amounts under $10,000, from the bank accounts into which Beeckman wired funds. (*Id*. at ¶¶ 22-24).

Curtis was charged with conspiracy to commit wire fraud as a result of his involvement in Beeckman's scheme. (R. 1, Indictment, Count 1). Counts 2 through 6 of the Indictment charged that Curtis engaged in the structuring transactions, i.e., Curtis' withdrawals from those bank accounts, "as part of a pattern of illegal activity involving more than $100,000 in a 12-month period." *(Id.* at Counts 2-6). Pursuant to 31 U.S.C. § 5324(d)(2), such a "pattern" violation subjected Curtis to the enhanced criminal penalty "for aggravated cases" and raised the statutory maximum prison sentence from five years to ten.

Curtis represented himself at trial and was convicted of all counts in the indictment. (R. 46, Verdict Form at 1-4). In a special verdict form, the jury found, beyond a reasonable doubt, that Curtis committed the structuring offenses, as charged in Counts 2-6, "as part of a pattern of illegal activity involving more than $100,000 in a 12-month period." (*Id*., Special Verdict, Verdict Form at 5). At his sentencing, Curtis was represented by counsel. He was sentenced to serve

sixty months in prison on Count 1, and sixty-three months on Counts 2-6, all to run concurrently, for a total prison sentence of sixty-three months.  (R. 68, Judgment and Commitment Order).

### 1.  The Self-Representation Issue and New Trial Motion.

Before trial, Curtis and his retained counsel developed "irreconcilable differences" that resulted in retained counsel withdrawing from Curtis' representation.  (R. 23, Order Granting Motion to Withdraw).  Curtis informed the district court that he wanted to represent himself at trial, and the district court referred that issue to the Magistrate Judge for resolution.  On November 19, 2009, the magistrate judge conducted a full hearing on Curtis' counsel's motion to withdraw and on Curtis' request to represent himself.  (R. 89, Colloquy at  Hearing Tr.).  At the hearing, the magistrate judge reviewed with Curtis "a litany of questions" to make sure Curtis was "knowingly and voluntarily waiving [his] right to an attorney in this case."  (*Id.* at 4).  The magistrate judge's inquiry followed the Judicial Conference's *Bench Book for United States  District Court Judges*, 4-5 (March 2000 rev.).  (*Id.* at 4-13, 17-19).  After reviewing the questions set out in the *Bench Book*, the Magistrate Judge admonished Curtis:

> I must advise you that in my opinion a trained lawyer will defend you far better than you could defend yourself in this case.  I think it's unwise of you to try to represent yourself.  You're not familiar with the law or [–] at least you say you're familiar with the statute [–] , but

3

have no familiarity with the Federal Rules of Evidence, no familiarity
with the Federal Rules of Criminal Procedure[. D]espite the fact that
you perhaps have read through the statute that you're charged with,
you may not understand case law which interprets those statutes. . . . I
strongly encourage you not to represent yourself in this case. . . . And
in light of the penalty that you might suffer upon conviction in this
case if you're found guilty, and in light of all the difficulties that I've
pointed out and that we've talked about in representing yourself, do
you still desire to represent yourself and to give up you right to be
represented by an attorney?

"Yes, sir," Curtis replied. (*Id.* at 19-20).

 The Magistrate Judge advised Curtis that he might be eligible for CJA-

appointed "standby counsel." (*Id.* at 21-22). Curtis did not want standby counsel,

and the magistrate judge had Curtis sign a written Waiver of Right to Appointed

Counsel. (*Id.* at 22-23; R. 24, Waiver). The magistrate judge ordered that Curtis

be allowed to represent himself, finding that Curtis had voluntarily and

intelligently waived his right to counsel. (R. 23, Order).

At a pretrial conference, in March, 2010, the district judge advised Curtis

that he had decided to appoint standby counsel, whether Curtis wanted him to or

not. (R. 88, Colloquy at Pretrial Conference Tr. 2-4). Curtis acquiesced and

agreed to having standby counsel. (*Id.* at 10). The district judge advised Curtis

that "if I allowed you to withdraw your request" to represent himself, the judge

would consider appointing counsel to actually represent Curtis at trial. (*Id.*). This

exchange followed:

4

Curtis:          "I'm not going to do that.   I'm ready to go.  If [standby counsel] will help me with the filing and answering questions, that is fine."

The Court:   "You're sure?"

Curtis:          "Yes."

The Court:   "No turning back?

Curtis:          Yes, sir.

(*Id.*)

The district court appointed standby counsel.  (R. 40, Order Appointing Counsel; R. 43, CJA Appointment).   Standby counsel was to be available to Curtis in the courtroom, but he let Curtis decide whether the attorney was to sit with him at counsel table or simply be present in the back of the courtroom.  (*Id.* at 13-15).

After he was tried and convicted, Curtis moved for a new trial on the grounds that the district court erred in allowing him to represent himself.  (R. 50, Motion for New Trial).  In his motion for a new trial, Curtis claimed "it was error for the trial court to allow him to represent himself during the trial of this case." (R. 50,  Motion for a New Trial).  He contended that he had "no knowledge of the federal rules of criminal procedure or the federal rules of evidence." (*Id.*).  Curtis

stated that "a defense attorney would have been able to raise a number of issues during the trial" that Curtis could not effectively raise.  (*Id.*).

The United States opposed the new-trial motion.  (R. 53,  Response to Defendant's New Trial Motion).  The United States pointed out that at the November 19 hearing concerning Curtis' self-representation, "the defendant stated unequivocally that he intended to represent himself and did not want counsel appointed to represent him."  (R. 53, United States' Response to Defendant's Motion for New Trial at 3.)  The United States described the "lengthy colloquy" the Magistrate Judge had with Curtis, including the disadvantages of self-representation, and his advice that it was not in Curtis' best interest to represent himself.  (*Id.*).  The United States also noted that Curtis had declined to take advantage of standby counsel during trial.  (*Id.* at 4).

While the new-trial motion was pending, current counsel was appointed to represent Curtis at sentencing.  (R. 56, Order Granting Motion to Substitute Counsel).  Approximately one month later, the district court denied Curtis' new-trial motion.  (R. 63, Order Denying Motion for New Trial).  The court stated:

> The defendant was warned of the consequences of proceeding pro se. He was made fully aware of the hazards and disadvantages of self-representation.  The Magistrate did everything possible to dissuade the Defendant from his insistence on representing himself.  The undersigned did likewise but to no avail.  Stand-by counsel was appointed but the Defendant chose mainly not to utilize him.  The

6

> Defendant's decision to represent himself was made knowingly and
> voluntarily.
> . . .
> [I]n light of Defendant's unequivocal waiver of this right to counsel,
> it would have been error for the Court to have appointed Counsel to
> take over the Defendant's case.

(R. 63, Order Denying New Trial Motion).

### 2.  The Obstruction-of-Justice Enhancement

During the defense case at trial, Curtis, acting pro se, called his elderly

mother to testify as his last witness.   (R. 84, Bette Curtis at Jury Trial Tr. 24-32).

Curtis asked his mother some introductory questions concerning her decades as a

public school teacher and as pianist for her church.  (*Id.* at 24-25).  He then asked,

"In this courthouse, during the course of this trial, were you threatened by [AUSA]

Marisa Ford?"  (*Id.* at 25).  AUSA Ford objected and the court conducted a brief

bench conference.  At the bench, AUSA Ford flatly denied ever making such a

threat to Mrs. Curtis, and denied that she had even spoken to Mrs. Curtis at any

time since she was in the grand jury in 2008.  (*Id.*).  The Court allowed Mrs. Curtis

to testify in response to her son's question, subject to the prosecutor's cross-

examination.  (*Id.* at 25-26).

Curtis then elicited testimony from his mother that on the first day of trial,

in the upstairs hallway of the courthouse, the AUSA Ford allegedly told Mrs.

Curtis, "[I]f I changed one word in my testimony that I had given at the grand jury,

if I changed one word, she was going to impeach me and have me jailed." (*Id.* at 26). That was the only substantive testimony Mrs. Curtis provided. Mrs. Curtis refused to retract the statement on cross examination.

The Presentence Report recommended that Curtis' sentence be enhanced two levels for obstruction of justice, for putting "his mother on the witness stand and causing her to permit [sic] perjury." (R. 69, Presentence Report at ¶ 43). Curtis objected in writing to the obstruction enhancement the Probation Officer recommended. The written objection was somewhat garbled:

> As to an adjustment for obstruction of justice, Mr. Curtis and his mother still maintain that the United States Attorney threatened criminal prosecution of Mr. Curtis's mother if there was any inconsistency between grand jury testimony and petit jury testimony, even if the discussion did not occur as the United States proffered that it did not, instructing a witness to tell and give truthful testimony. [sic] He offers that this conversation could not and should not be considered obstruction of justice. Mr. Curtis therefore, denies under 3C1.1 that in asking his mother to testify without committing, suborning, or attempting to suborn perjury, in the absence of any proof that any such attempt or request was made of his own mother, that the adjustment for obstruction of justice is not well taken.

(R. 64-1, Objections to Presentence Report).

At sentencing, Curtis' counsel did not call any witnesses. However, he proffered that "Mr. Curtis would deny that he has ever instructed or suggested to his mother that his mother give false testimony, and while his mother would also say to the court that that never occurred, I'm not sure that is really at the heart of

the matter for obstruction."  (R. 86, Colloquy, Sentencing Tr. at 7 ).  "Simply

calling one's mother to the stand   . . . [didn't] amount[] to an obstructive incident

for which a two-point enhancement would apply . . . ."  (*Id.* at 8).  "[M]y objection

is, that even if it happened the way the United States said it did, that it's not

obstructive in and of itself. . . .  So my argument is twofold.  I don't see the

obstructive conduct.  And number two, I don't think it should be applicable to him

without further proof."  (*Id.* at 8-9).

The United States provided that "further proof" at sentencing.  In support of

the obstruction enhancement, AUSA Ford was sworn as a witness and again flatly

denied that she ever spoke to Curtis' mother at trial, much less threatened  anyone,

including Curtis or his mother, to "have her jailed."   The prosecutor testified

about a brief discussion she had with Curtis concerning Jencks Act material:

> [I] approached Mr. Curtis the morning of trial on March 29th, and
> provided him directly the Jencks Act material and attempted to
> explain to him what Jencks Act material was.  I advised him these
> were witnesses the United States intended to call at trial and that he
> was entitled to copies of their prior sworn testimony.
>
> I came back to my seat here in the courtroom.  Mr. Curtis followed
> me across the courtroom and asked about his mothers's – a transcript
> of his mother's grand jury testimony.  He didn't ask about his father's
> testimony, but specifically asked about the transcript of his mother's
> grand jury testimony.
>
> I advised him at that time that it appeared most likely that Mr. Curtis
> would probably call his mother as a witness in the case rather than the

9

United States.  That being the case, it was not Jencks Act material.
He was not entitled to a copy of her grand jury testimony.

And that in the event that he decided to call her as a witness at trial, at
that point, if in some way her testimony at trial deviated or differed in
any material respect from her prior testimony in the grand jury, that
she could be impeached with that information from her prior sworn
statement

Mr. Curtis appeared somewhat angered by my comments and asks me
["W]hat makes you think my mother would change her testimony[?"]

And I explained to him I was not suggesting that she was going to
change her testimony.  I was trying to explain to him how the
procedure worked since he was representing himself, but that he
needed to be aware of why it wasn't Jencks Act material and how it
could potentially be used through the course of trial.

(R. 86, Ford at Sentencing Tr. 16-17).

AUSA Ford continued with her testimony:

The only time that I have had any other contact at all with Bette
Curtis was on October the 8th of 2008, in the federal courthouse in
Bowling Green, Kentucky when she was called to testify as a witness
before the grand jury.

I saw her in the courthouse here in Owensboro when we started trial
on March the 29th in this case.  I did not have any conversation of any
kind with her.

(*Id.* at 18-19).

On cross examination of AUSA Ford at sentencing, Curtis' attorney

attempted to show that Mrs. Curtis' testimony could have been something other

than actual perjury, such as the result of a misunderstanding, or of some "warnings

or cautionary things that Mr. Curtis may have said to his mother before trial." (*Id.*

at 30).  AUSA Ford responded:

> Her testimony at trial was that I threatened her in this courthouse the
> first day of trial.  Her testimony was unequivocal and crystal clear.
> There wasn't any confusion about what she was testifying to.  And
> what she testified to never happened.

(*Id.*).  AUSA Ford explained why the perjured testimony was material:

> In my view, by the defendant putting his 80-year-old mother on the
> stand to accuse me basically of threatening an 81[sic]-year-old
> woman with imprisonment, the only motivation or purpose for
> offering that is to try to infect the jury to create some negative feeling
> on the part of some of the jurors  towards the government, towards
> the prosecution of the case [,] in an attempt to get jury nullification or
> even an acquittal in the case.

(*Id.* at 23).  In argument, AUSA Ford elaborated on the materiality of Mrs. Curtis'

testimony:

> The only reason that she was called – she had no evidence relevant to
> this case at all.  And when Mr. Curtis asked her, it was the third or
> fourth question on his examination, ["I]sn't it true that Marisa Ford
> threatened you in this courthouse [?",] I objected.
> . . .
> The only reason that she was called was to offer that evidence and to
> suggest to the jury[,] to try to infect the jury with some idea that I had
> engaged in some kind of outrageous conduct [,] to try to get, if not an
> entire jury, at least one or two jurors to nullify in this case, a case in
> which there was overwhelming evidence against the defendant.

(*Id.* at 11-12).

11

At sentencing, the district court made the following ruling:

> I believe that Mrs. Curtis intentionally lied during her testimony.  I
> think that the defendant knew that she was lying and I think that his
> sole purpose was to get that information before the jury to try to
> manipulate their feelings on the issue.
>
> I credit Ms. Ford's testimony, that there was no discussion [between
> Mrs. Curtis and AUSA Ford] whatsoever.  I think it was an
> intentional act on their part to commit perjury and obstruct justice.
> So I think the enhancement applies two levels.

(R. 86, Colloquy at Stentencing Tr. 35-36).  Curtis did not request any other

findings from the district court.

### 3.  Application of the "Pattern" Enhancement

In addition to the adjustment for obstruction of justice, the district court

applied adjustments called for by USSG § 2S1.3.  This section applied because

Curtis was convicted of structuring financial transactions.  The base offense level

was calculated under § 2S1.3, and started at six, under USSG § 2S1.3(a)(2).  (R.

69, Presentence Report at ¶ 38).  Section 2S1.3(a)(2) requires that additional levels

be added on the basis of the value of the funds structured, using the table at USSG

§ 2B1.1.  The amount of the structured funds for which Curtis was responsible was

$410,528.  That added fourteen levels, resulting in an offense level of 20.  (*Id.* at

¶ 38).

In addition, § 2S1.3(b)(1)(A) requires a two-level upward adjustment if the defendant knew or believed that the funds were proceeds of unlawful activity.  (R. 69, Presentence Report at ¶ 39).  In his written objections, Curtis objected to application of this adjustment, contending that he did not participate in any of his girlfriend's illegal conduct.  (R. 64-1, Objections to Presentence Report, at 3).  But Curtis did not deny that he knew the funds were proceeds of Beeckman's theft from her employer.  He merely contended he did "initiate," "condone," "participate in," or "facilitate" her thefts.  (*Id.*).

Finally, USSG § 2S1.3(b)(2)(B) required an additional two-level enhancement of the offense level "[I]f the defendant was convicted of an offense under subchapter II of Chapter 53 of Title 31, United Sates Code,[1] and (B) committed the offense as a part of a pattern of unlawful activity involving more than $100,000 in a 12-month period."  In its Special Verdict, the jury found that Curtis had done just that.  (R. 46, Special Verdict Form, Jury Verdict at 5).   As a result, the Probation Officer deemed § 2S1.3(b)(2)(B) applicable.  (R. 69, Presentence Report at ¶ 40).

In written objections to this enhancement, Curtis contended that using the chart at USSG § 2B1.1 accounted for a volume adjustment in the amount of the

---

[1]31 U.S.C. § 5324, under which Curtis was convicted, falls within the designated subchapter.

criminal activity, and argued it was "double counting" for the § 2S1.3(b)(2)(B)

"pattern" adjustment, which required a finding that the pattern of unlawful activity

involved more than $100,000, also to be applied.  (R. 64-1, Objections to

Presentence Report at 3.)

At sentencing, Curtis did not clearly articulate his previous written

objection, i.e., that  § 2S1.3(b)(2)(B) constituted double counting when considered

in conjunction with § 2B1.1.  Instead, he stated he believed "very strongly" "that

§ 2S1.3(b)(1)(A) and [§ 2S1.3](b)(2)(B) . . . are double counting."  Nevertheless,

he acknowledged that both adjustments "probably apply to the facts of this case."

(R. 86, Colloquy at Sentencing Tr. 36-37).  He conceded that unlike the "pattern"

enhancement, the chart at § 2B1.1

> does not deal with issues of time over the course of which a theft may
> occur either in a single theft, multiple incidents of theft, etc.
> Nonetheless, I believe the authors of the Sentencing Guidelines, in
> greatly enhancing those loss calculations, took into consideration the
> very enhancements that are dealt with in § 2S1.3(b)(1)(A) and
> [§ 2S1.3](b)(2)(B).

(*Id.*)  Despite this objection, he "candidly" acknowledged that both the "knowing"

and "pattern" adjustments "probably apply."  (*Id.* at 37-38).

In response to Curtis' argument at sentencing, the AUSA responded to his

statement that "§ 2S1.3(b)(1)(A) and [§ 2S1.3](b)(2)(B), I believe, are double

counting."  (Because he had not offered any oral explanation at sentencing of how

§ 2S1.3(b)(2)(B) constituted double counting in conjunction with chart at § 2B1.1, the prosecutor responded to what he *did* argue.)  She explained that the two § 2S1.3 adjustments "capture two different things."  The adjustment in § 2S1.3(b)(1)(A) penalizes the defendant for structuring funds he knew were the proceeds of criminal activity.  The adjustment in § 2S1.3(b)(2)(B) penalizes the defendant for engaging in structuring as part of pattern of illegal activity involving $100,000 over a defined period of time – twelve months.  (*Id.* at 38-39).

When the judge inquired whether Curtis had "any response" to the AUSA's explanation, Curtis' attorney said, "No sir.  I think the law is pretty clear."  (*Id.* at 39).  Curtis did not request that the district court make any additional factual findings to support either of these adjustments.  The district court then applied both adjustments, finding that Paragraphs 39 and 40 of the Presentence Report, which applied both the § 2S1.3 adjustments, were proper.  The court noted that "[paragraph] 39 deals with whether the defendant knew or believed that the funds were coming from an unlawful activity.  And from my hearing of the evidence, and what's in the presentence report, I find that he did know that."  (R. 86, Sentencing Colloquy at 39).  The court continued:  "With respect to paragraph 40, that punishes a pattern.  And it requires at least two occasions involving a certain amount of money, and I think that is not double

15

counting. So I think it properly applies too." (*Id.* at 39-40).  The district court overruled all of Curtis' sentencing objections.  (*Id.* at 40).

At the conclusion of the sentencing, after imposing sentence, the district court asked the "Bostic" question:  "Any other objection about the sentence that we haven't already talked about?"  "Not otherwise previously stated," replied Curtis' counsel.  (*Id.* at 72).

## SUMMARY OF THE ARGUMENT

The district court conducted an appropriate inquiry on Curtis' request to represent himself, and therefore did not abuse its discretion in denying Curtis' motion for new trial, which was based on Curtis' claim that the district court erred in accepting his waiver of counsel.

At sentencing, the district court properly applied the obstruction-of-justice enhancement to Curtis' base offense level because Curtis suborned perjury by calling his mother to the stand to falsely testify about an event both she and Curtis knew had not happened.

The jury's special verdict provided the factual basis for enhancing Curtis' sentence for committing the offenses charged in Counts 2-6  as a part of a pattern of unlawful activity involving more than $100,000 in a 12-month period

This Court lacks authority to order any change in the trial transcript.

16

<u>ARGUMENT</u>

I.    THE  DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
      RULING ON CURTIS' SELF-REPRESENTATION ISSUES.

   A.    <u>Standard of Review</u>

   Curtis claims the district court erred in allowing him to prepresent himself,

and therefore, should have granted him a new trial.  The standard of review is

whether the district court abused its discretion in denying the new-trial motion.

*United States v. Herndon,*  156 F.3d 629, 634 (6th Cir. 1998).   Curtis has the

burden of showing the district court's decision not to grant a new trial constituted

an abuse of discretion.  *See  United States v. Seago*, 930 F.2d 482, 488 (6th Cir.

1991).  A district court abuses its discretion if  it "relies on clearly erroneous

findings of fact, improperly applies the law, or uses an erroneous legal standard."

*United States v. Washington,* 584 F.3d 93, 695 (6th Cir. 2009). Only if the

appellate court forms a "definite and firm conviction that a mistake has been

committed" may the court reverse on the basis of the district court's factual

findings.  *Anderson v. City Of Bessemer*, 470 U.S. 564, 573 (1996).

   B.    <u>The District Court Conducted a Proper Inquiry on the Issue of
         Whether Curtis Knowingly and Voluntarily Waived His Right to
         Counsel.</u>

   In his Brief, Curtis contends that the district court gave him "insufficient

warnings at to the risks and dangers of proceeding to trial without counsel."

17

Curtis Brief at 3. He contends that the "Court's failure to adequately warn and explain the waiver necessary to proceed pro se". . . is a "significant" issue. Curtis Brief at 4. But Curtis has simply overlooked the fact that the court below conducted a full and fair hearing on the issue of Curtis' request to represent himself. Curtis did not order a transcript of that hearing, but it has now been filed in the record at the request of the United States.

That transcript demonstrates that the Magistrate Judge thoroughly and carefully followed the inquiry suggested in the *Bench Book for United States District Judges*. The Magistrate Judge also strongly admonished Curtis that self-representation was unwise and found that his waiver of counsel was knowing and voluntary. Curtis' written waiver acknowledged that he was informed of his right to counsel, that he understood that right, but insisted on representing himself.

A criminal defendant has a right to represent himself, so long as his waiver of counsel is knowing and intelligently made. *Faretta v. California*, 422 U.S. 806, 835 (1975). This Court has repeatedly issued published opinions holding that when the district court conducts the model inquiry and gives the admonition set forth in the *Bench Book for United States District Judges*, and then makes a finding that the defendant knowingly and voluntarily waived his right to counsel, that waiver is to be upheld. *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir.

1987); *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004); *United States v. Williams*, 641 F.3d 758, 767 (6th Cir. 2011).  In this case, the record demonstrates that the district court adhered to the model inquiry, sternly admonished Curtis that it was not in his best interest to proceed pro se, and expressly found that he knowingly and voluntarily waived counsel.  The district court did not err in allowing Curtis to represent himself and did not abuse its discretion in denying Curtis' motion for a new trial.

II.    THE DISTRICT COURT PROPERLY APPLIED THE OBSTRUCTION-
        OF-JUSTICE ENHANCEMENT.

   A.    Standard of Review

   Normally, review of a district judge's decision to impose an obstruction-of-justice enhancement pursuant to § 3C1.1 is a three-step process. The district court's factual findings underlying the enhancement are reviewed for clear error. *United Sates v. Chance,* 306 F.3d 356, 389 (6th Cir. 2002).  The appellate court must "give due regard to the opportunity of the district court to judge the credibility of the witnesses" and must accept the lower court's findings "unless they are clearly erroneous."  18 U.S.C. §3742(e); *United States v. Hurst*, 228 F.3d 751, 761 (6th Cir. 2000).  A district court's conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact and is reviewed de novo.  Once a district court has determined that the defendant

19

obstructed justice, the application of the two-level enhancement is mandatory and the appellate review of that enhancement is de novo. *Chance,* 306 F.3d at 389. Factual findings relevant to sentencing must be supported only by a preponderance of the evidence. *United States v. Zajac,* 62 F.3d 145, 148 (6th Cir. 1995).

The usual standard of review does not apply in this case because of the nature of Curtis' claim. Curtis contends on appeal that the district court should not have applied the obstruction-of-justice enhancement because the district court allegedly did not make findings consistent with *United States v. Dunnigan*, 507 U.S. 87 (1993). Curtis Brief at 27-29. Curtis did not make any request for such findings at sentencing. Absent any contemporaneous objection at sentencing to the failure of the judge to make *Dunnigan* findings, appellate review of the application of the obstruction-of-justice enhancement is for plain error. *See e.g., United States v. Flonnory*, 630 F.3d 1280, 1288 (10th Cir. 2011).

To warrant appellate reversal for plain error, it is up to the appellant to show that there was "error" and that the error was "plain," i.e., "clear" or "obvious," *United States v. Olano*, 507 U.S. 725, 734 (1993), and "so plain that the trial judge was 'derelict in countenancing it.'" *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). The appellant must also demonstrate that the obvious error affected his substantial rights. Even if all those three criteria are satisfied, appellate courts

are not required to correct the error.  In its discretion, this Court need only correct

the error if it concludes the error "seriously affect[s] the fairness, integrity or

public reputation of judicial proceedings."  *Olano*, 507 U.S. at 736.

B.    The District Court Did Not Err in Applying the Obstruction of Justice
      Enhancement Because Curtis Suborned His Mother's Perjury

Curtis contends that because he did not personally commit perjury at trial,

the district court improperly added a two-level obstruction-of-justice enhancement

to his sentence.  He argues that "unless there is a finding that the *Defendant*

*himself* committed an act of perjury. . .[,] such an enhancement is inappropriate.

Curtis Brief at 29 (emphasis supplied).  He contends that "the application of 2

Points for obstruction" "are not legally supported by the finding of the court."

Curtis Brief at 31.

Curtis ignores the fact that application note (b) to USSG § 3C1.1 states that

the obstruction-of-justice enhancement applies if the defendant engaged in

"committing, *suborning*, or attempting to suborn perjury."  The note does not

define the term "suborning perjury," but statutory provisions unambiguously

establish what that term means:  "Perjury" is defined at 18 U.S.C. § 1621:

"Whoever[,] having taken an oath before a competent tribunal, officer, or

person . . . in any case in which a law of the United Sates authorizes an oath to be

administered, that he will testify . . . truly . . ., wilfully and contrary to such oath

21

states  . . . any material matter which he does not believe to be true . . . is guilty of perjury." *See also Dunnigan*, 507 U.S. at 94 (A witness commits perjury, when, testifying under oath, she "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory.").  "Suborning" perjury is defined in 18 U.S.C. § 1622: "Whoever *procures another* to commit any perjury is guilty of subornation of perjury. . . ."  (emphasis supplied).

In Curtis' case, the evidence showed that the only way Mrs. Curtis could have even plausibly believed she had been "threatened" with jail is if Curtis recounted to his mother a false characterization of AUSA Ford's discussion with him about the Jencks Act and "impeachment."   Perhaps he convinced his mother that AUSA Ford had threatened to "throw her in jail."  But Mrs. Curtis knew AUSA Ford had personally made no such threat to her on the first day of trial in the courthouse corridor.  By calling his mother to the stand, to testify as to an alleged personal conversation both Mrs. Curtis and the defendant knew had not happened, Curtis procured his mother to willfully lie on the stand.  Her testimony was "material" because there was no reason to offer it except in hopes that somehow jury sympathy for her would turn the tide against Curtis' conviction. (False testimony is "material" if believed, it would tend to influence or affect the

issue under determination.  USSG § 3C1.1, comment (n. 6.)  By procuring his

mother to willfully testify untruthfully at trial, in hopes of avoiding a guilty

verdict, Curtis "suborned perjury."  Under the express language of application

note (b) to § 3C1.1, the obstruction-of-justice enhancement applies.

    Curtis' argument that the district judge's factual findings do not satisfy the

requirements of *Dunnigan* is not well founded.   *Dunnigan* requires that the

"district court . . .  review the evidence and make independent findings necessary

to establish a willful impediment to or obstruction of justice . . . under the perjury

definition we have set out."  *Dunnigan*, 507 U.S. at 95.  A finding that a witness

lied under oath, knowing that the testimony was untruthful, and the testimony was

material, satisfies *Dunnigan*.   The district court made it crystal clear that he

believed AUSA Ford's version of events, and believed Mrs. Curtis "intentionally

lied" when she testified AUSA Ford had threatened her.   He further found that

Curtis, who offered her testimony,  knew she would lie, and called her as a witness

"to try to manipulate [the jurors'] feelings on the issue" of whether to convict

Curtis or not.  Those factual findings are well support by AUSA Ford's testimony.

Even if Curtis somehow convinced his mother that AUSA Ford had threatened her

with jail, both Curtis and his mother knew that the *personal* threat never happened. Her testimony was therefor false, and wilfully so.[2]

Moreover, *Dunnigan* deals with the particular constitutional issues inherent in holding a *defendant* liable for obstruction for exercising his right to testify at trial. *Dunnigan* required particularized findings before imposing an obstruction of justice enhancement based on the *defendant's* testimony. Such findings are necessary "*if a defendant objects* to a sentence enhancement resulting *from [the defendant's] trial testimony*." *Dunnigan*, 507 U.S. at 95 (emphasis supplied). *Cf. United States v. Gilpatrick*, 548 F. 3d 479, 485 (6th Cir. 2008) (noting that "Supreme Court emphasized that such a finding must be made *only if 'the accused has committed perjury at trial*.'") (emphasis supplied.)

The district court properly applied the obstruction-of-justice enhancement.

---

[2]Curtis inaccurately suggests on appeal that while the prosecutor stated she did not threaten to "throw Mrs. Curtis in jail," she "did warn the Defendant of the possible use of a *perjury charge* if the Defendant's mother testified inconsistently from that of the grand jury." Curtis Brief at 27. Curtis cites page 36, lines 13-17, for that assertion. Nowhere in the trial or sentencing transcript is there *any* evidence that the prosecutor warned Curtis or anybody else of a possible "perjury charge." According to the prosecutor, "the word perjury was definitely not used" in any discussion with Curtis, or his mother, during the trial. (R. 86, AUSA Ford at Sentencing Tr. 29). The prosecutor's explanation to the pro se defendant that prior testimony could be used to impeach a witness is a far cry from threatening anyone with a "perjury charge." And explaining to the defendant how grand jury testimony might be used to impeach a witness is not license for the defendant to call the witness to the stand and fabricate a story that the prosecutor personally spoke to the witness on the first day of trial and uttered a threat.

III.    THE DISTRICT COURT PROPERLY APPLIED THE "PATTERN"
        SENTENCING ENHANCEMENT UNDER USSG § 2S1.3(b)(2)(B)

It is difficult to articulate the standard under which this Court reviews the

district court's ruling on the "pattern" sentencing enhancement without first

determining just what it is that Curtis claims as error.  Accordingly, the claim he

makes on appeal is summarized here.  Curtis has apparently abandoned his

objection to paragraph 39 of the presentence report, which applied the "knowing"

two-level adjustment of § 2S1.3(b)(1)(A).  Instead, in this appeal, Curtis focuses

on his contention that the district court erred in overruling his objection to the 2-

point "pattern" adjustment under USSG § 2S1.3(b)(2)(B):

> As to the enhancement in paragraph [sic] [§]2S1.3(b)(2)(B), the
> Defendant/ appellant was enhanced 2 levels by a finding that he both
> committed the offense as part of [a] pattern of unlawful activity and
> that the scheme involved more than $100,000 in a 12 month period.
> The Defendant appropriately objected to this enhancement being
> double counting.  The economic loss set forth in the enhanced
> provision under the newly revised United States Sentencing
> Guidelines, under [§]2B1.1 directly deal with accumulative loss  as
> alleged to have been perpertrated by Mr. Curtis by virtue of the jury
> verdict.

Curtis Brief at 29-30.  But it does not appear that Curtis is reiterating his "double

counting" argument in this appeal.[3]  Instead, he states "in conclusion," that

_____

[3]The "Summary of the Argument" in Curtis' Brief does not help.  He
contends only that "the court erred in sentencing in the imposition of two
enhancements . . . ."  Curtis Brief at 6.

25

application of "2 points for the structuring finding" under § 2S1.3(b)(2)(B) is "not factually supported by the findings of the court." Curtis Brief at 31.

The record does not show that Curtis ever objected below to the "pattern" adjustment on the grounds that the district court did not find facts to support it. Because he did not object to the factual basis for that adjustment, this argument is subject only to plain error review. As previously noted, to warrant appellate reversal for plain error, it is up to Curtis to show that there was "error" and that the error was "plain," i.e., "clear" or "obvious," *Olano*, 507 U.S. at 734, and "so plain that the trial judge was 'derelict in countenancing it.'" *Cowart*, 90 F.3d at 157. Curtis must also demonstrate that the obvious error affected his substantial rights. Even if all those three criteria are satisfied, appellate courts are not required to correct the error. In its discretion, this Court need only correct the error if it concludes the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736.

The district court did not err in applying the adjustment, or in failing to make factual findings to support it, because the adjustment was factually supported by the jury's finding in the special verdict form. The jury expressly found that Curtis committed the structuring offenses, as charged in Counts 2-6, "as part of a pattern of illegal activity involving more than $100,000 in a 12-month

period."  It was because of that special verdict that Curtis could be and was sentenced to more than five years as to each of Counts 2 through 6.  (R. 69, Presentence Report at ¶ 88).

## IV.    THIS COURT LACKS AUTHORITY TO REQUIRE AMENDMENT OF THE TRANSCRIPTS

Curtis suggests that persons who were present at his trial believe the transcripts do not accurately reflect what transpired in the district court.  Under Fed. R. App. P. 10(e), any disagreement concerning the accuracy of the record "must be submitted to and settled by that court and the record conformed accordingly."  Curtis has made no motion to correct the record in the district court and does not note any specific instances in which the transcript allegedly misstates or omits any part of the district court proceedings.

For that reason, this Court should not grant any relief to Curtis on this issue.

<u>CONCLUSION</u>

The judgment of the district court should be affirmed.


Respectfully submitted,

DAVID J. HALE
United States Attorney


s/ Candace G. Hill
Candace G. Hill
Assistant U.S. Attorney
U.S. Attorney's Office
510 W. Broadway, 10th Floor
Louisville, KY 40202
(502) 625-7079
FAX: (502) 582-5067
Email: Candy.Hill@usdoj.gov
Attorney for the United States



<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:  Andrew M. Stephens, 107 Church Street, Suite 200, Lexington, Kentucky 40507.

s/ Candace G. Hill
Candace G. Hill
Assistant U.S. Attorney

28

APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Record Entry | Description of Document |
|---|---|
| 1 | Indictment |
| 23 | Order Granting Motion to Withdraw |
| 40 | Order Appointing Counsel |
| 43 | CJA 20 Appointment of Counsel |
| 46 | Jury Verdict |
| 50 | Motion for New Trial |
| 53 | United States' Response to Motion |
| 56 | Order Granting Motion to Substitute Counsel |
| 63 | Order Denying Motion for New Trial |
| 64-1 | Objection to Presentence Report |
| 68 | Judgment and Commitment Order |
| 69 | Presentence Investigation/Statement of Reason Report |
| 84 | Transcript of Jury Trial (Vol. 3) |
| 86 | Transcript of Sentencing Hearing |
| 88 | Transcript of Pretrial Conference |
| 89 | Transcript of Hearing on Self-Representation |
|  |  |